**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CLEAR WITH COMPUTERS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO.  6:12-CV-622** |
| | § | **LEAD CASE** |
| **AGCO CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |

| | | |
|---|---|---|
| | § | |
| **CLEAR WITH COMPUTERS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO.  6:13-CV-161** |
| **vs.** | § | **LEAD CASE** |
| | § | |
| **FISHING HOLDINGS, LLC dba** | § | |
| **RANGER BOATS,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This Memorandum Opinion construes the disputed claim terms in U.S. Patent Nos. 5,625,776 ("the '776 Patent") and 7,606,739 ("the '739 Patent") (collectively, the "asserted patents").  On March 13, 2014, the parties presented arguments on the disputed claim terms at a *Markman* hearing.  For the reasons stated below, the Court adopts the following constructions.

**BACKGROUND**

Plaintiff Clear with Computers, LLC ("CWC") alleges that Defendants infringe the asserted patents.  The asserted patents are part of a family that traces its priority to the

application that issued as U.S. Patent No. 5,493,490, filed May 5, 1992. The Court has previously construed members of this family five separate times.[1]

## APPLICABLE LAW

### *Claim Construction*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

---

[1] *See Orion IP, LLC v. Xerox Corp.*, Case No. 6:07-cv-138, Docket No. 805 (E.D. Tex. Aug. 21, 2008) ("*Xerox* Order"); *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717 (E.D. Tex. 2005) ("*Staples* Order"); *Orion IP, LLC v. Mercedes-Benz, LLC*, Case No. 6:05-cv-322, Docket No. 488 (E.D. Tex. Apr. 10, 2007); *Clear with Computers, LLC v. Hyundai Motor America, Inc.*, Case No. 6:09-cv-479, Docket No. 143 (E.D. Tex. Jan. 5, 2011) ("*HMA* Order"); and *Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, Case No. 6:09-cv- 481, Docket No. 169 (E.D. Tex. Jan. 5, 2011).

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.  Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).  This presumption does not arise when the patentee acts as his own lexicographer.  *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'"  *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).  But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims."  *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton, Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted)). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Finally, the Court gives reasoned deference to prior claim construction rulings involving common terms in related patents. *See Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-cv-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006) (holding prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*."); *Omega Engineering, Inc. v. Raytek*

*Corp.*, 334 F.3d 1314, 1334 (Fed.Cir.2003)("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").

## I.     Agreed Terms

| Term | Agreed Construction |
|------|---------------------|
| "static database" ('739 Patent, claims 1, 11, 20) | A database that is not alterable during generation of a composite visual output" |

## II.     Claim Construction of Disputed Terms

**"customized proposal" ('776 Patent, claim 61; '739 Patent, claims 2, 3, 12, 20, and 21)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|------------------------------|------------------------------------|
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | "information for selling equipment to a specific, identifiable customer reflecting the customer's desired features and uses of the equipment" ('776 Patent claim 61)<br><br>"information for selling a tangible product to a specific, identifiable customer reflecting the customer's desired features and uses of the tangible product" ('739 Patent, claims 2, 3, 12, 20, and 21) |

This term appears in both the preamble and body of claim 61 of the '776 Patent. Defendants argue the term in the preamble serves as an antecedent basis for the term in the body. Docket No. 111 at 6. According to Defendants, the preamble limits the claim because "[t]he entire purpose of the '776 Patent and claim 61 is to generate a customized proposal for selling equipment to particular customers." *Id.* Defendants contend the claim language and specification directly support their proposed constructions. *Id.* at 7–8.

CWC responds that the "Court already has ruled on the scope of the limitation of this claim term" in the *Staples* Order. Docket No. 114 at 2. While "CWC does not disagree" that the preamble is limiting, CWC claims that limitation should not be part of the term "customized

proposal." *Id.* at 3. CWC also objects to the limitation of a specific, identifiable customer because "the specification makes clear that the invention is directed to providing customized proposals for *potential* customers." Docket No. 114 at 3 (citing '776 Patent at col. 2:18–21) (emphasis added).

Defendants have failed to adequately support their proposed constructions. Defendants' proposed construction of claim 61 of the '776 Patent is redundant of the preamble, which clarifies that "customized proposal" is "for selling equipment to particular customers."[2] There is no need to import readily understood claim language into the construction this term. Defendants' limitation of "reflecting the customer's desired features and uses of the equipment" also repeats the claim language that clarifies the customized proposal is based on "receiving . . . information identifying a customer's desired equipment features and uses." '776 Patent, claim 61. Likewise, Defendants' proposed references to a "tangible" product and the "customer's desired features and uses" in their proposal for the '739 claims are addressed by surrounding claim language and should not be imported into the construction of the term "customized proposal." In sum, Defendants' proposals are nothing more than reading the plain meaning of these terms in the context of the claims as whole; therefore constructions are unnecessary. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.")

Accordingly, this term does not require construction.

---

[2] The Court discusses whether customers must be "specific, identifiable" in analyzing the "customer" term.

**"customer" ('776 patent, claim 61; '739 Patent, claims 1, 11, and 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | the identifiable person providing answers to the questions presented |

CWC argues that the Court should construe this term according to its plain meaning, consistent with its prior ruling in the *Staples* Order. Docket No. 114 at 3. Defendants respond that *Staples* addressed a different dispute and that "[u]nlike the prior cases, the parties here dispute whether a customer is an 'identifiable person,' and whether that identifiable person is the one 'providing answers to the questions presented.'" Docket No. 111 at 10. Defendants argue that "the intrinsic evidence repeatedly and consistently refers to a 'specific,' 'particular,' or 'individual' customer as the person providing answers to the questions." *Id.* at 10.

Defendants' limitation of an "identifiable"[3] customer is unclear and lacks sufficient support. The specifications describe "specific" or "particular" customers. *See, e.g.*, '739 Patent at col. 2:40–42 ("each customized proposal is customized for a particular customer"); '776 Patent at col. 2:34–37 ("The customized proposal, therefore, contains . . . information that is all of interest to and relevant to a specific customer."). However, Defendants have not shown why it is necessary to make such customers "identifiable" or what doing so means. Additionally, Defendants' limitation of "providing answers to the questions presented" is addressed by the surrounding claim language and should not be imported into the construction of the generic term "customer." The Court has already held that "according to the claim language . . . the customer is the person who answers the plurality of questions relating to the product's features and uses." *Staples* Order at 6. It follows that the claimed customer is not a class of people that provide

---

[3] In other terms, Defendants require customer to be a "specific, identifiable customer" for the same reasons that Defendants include "identifiable" in this term. *See, e.g.*, "customized proposal" and "customized visual output" proposals. The Court rejects adding "specific, identifiable" to those constructions for the same reasons it rejects adding "identifiable" to the construction of this term.

generic answers based on market research. *See* '739 Patent, col. 2. Therefore, Defendants' limitation of a customer as "the person providing answers to the questions presented" is nothing more than the plain meaning of the term when read in context of the claim as a whole.

Accordingly, this term does not require construction.

**"information identifying a customer's desired equipment features and uses" ('776 Patent, claim 61); "plurality of questions relating to features and uses of the equipment" ('776 Patent, claim 61); and "plurality of answers to the questions, the answers specifying the customer's desired equipment features and uses" ('776 Patent, claim 61)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction needed; if the terms need to be construed they should be given its plain and ordinary meaning. | "information identifying a customer's desired equipment features and uses" as "information separately identifying a customer's desired equipment features and the customer's desired equipment uses"<br><br>"plurality of questions relating to features and uses of the equipment" as "at least two questions, at least one of which relates to features of the equipment and at least one of which relates to uses of the equipment"<br><br>"plurality of answers to the questions, the answers specifying the customer's desired equipment features and uses" as "answers separately identifying the customer's desired features of the equipment and the customer's desired uses of the equipment" |

Defendants present similar arguments for these related terms. For the first term, Defendants argue the phrase "desired equipment" modifies both "features" and "uses." Docket No. 111 at 13. Defendants further argue "[t]he specification of the '776 Patent also demonstrates that the claimed "information" *separately* identifies the customer's desired equipment features and the customer's desired equipment uses." *Id.* at 14 (emphasis by Defendants). For the next term, Defendants argue "of the equipment" modifies both "features" and "uses" and that at least

one question must relate to the equipment features and a separate question must relate to equipment uses.  *Id.*  at 14–15.  For the third term, Defendants argue "desired equipment" modifies both "features" and "uses" and that at least one answer must relate to the equipment features and a separate answer must relate to equipment uses.  *Id.* at 15.  Therefore, Defendants propose constructions that clearly state there is one at least one question and answer regarding a customer's desired equipment features and at least one other question and answer regarding a customer's desired equipment use.  CWC responds that the claim scope as already been resolved in the *Staples* Order's construction of "plurality of questions relating to the features and uses of the products," and that the term needs no construction.  Docket No. 114 at 4.

Defendants' argument that there must be separate questions relating to the equipment features and uses has already been rejected.  *Staples* at 725–26 ("The specification does not require questions and answers on both features and uses . . . . [N]owhere is there any statement that the invention requires—at a minimum—a question and an answer on a customer's desired options (or features) and a question and an answer on a customer's desired interests (or uses).").  However, Defendants are correct that "desired equipment" modifies both "features" and "uses" and that "of the equipment" modifies both "features" and "uses."  *See, e.g.*, '776 Patent at col. 2:20–28 (describing both a customer's desired equipment "uses" and the customer's "features of interest" in the equipment).  Such reading of the term is consistent with its plain and ordinary meaning; therefore it is not necessary to adopt more complicated language.

Accordingly, this term does not require construction.

**"equipment environment pictures" ('776 Patent, claim 61) and "an image of an environment in which the product for sale is to be used" ('739 Patent, claims 1, 11, and 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the terms need to be construed each should be given its plain and ordinary meaning. | "equipment environment pictures" as "two or more pictures, illustrating an environment in which the equipment may be used, which do not include an image of the equipment"<br><br>"an image of an environment in which the product for sale is to be used" as "an image, illustrating an environment in which the product for sale may be used, which does not include an image of the product for sale" |

Defendants argue that the product for sale cannot be displayed in "equipment environment pictures" and the "image of the environment" cannot include the picture (or image) of the particular product for sale because the claims separately identify environment pictures (or images) and product pictures (or images). Docket No. 111 at 18–19. Therefore, Defendants are arguing the environment pictures (or images) cannot contain the particular product for sale. CWC responds that there is nothing in the intrinsic record to support Defendants' argument. Docket No. 114 at 5.

Defendants' arguments are not substantially different from the arguments the Court rejected in the *Staples* and *HMA* Orders. The Defendants in those cases argued that environment pictures [images] should not include pictures of products. *See Staples* at 731; *HMA* at 9. As the Court has previously ruled, "[t]he patentee used the terms (1) "product pictures," (2) "environment pictures," and (3) "text segments" to refer to three separate types of pictures. But that does not necessarily mean that a "product picture" must be devoid of anything but the product or that an "environment picture" must be devoid of anything but the environment." *Staples* at 732. Defendants attempt to distinguish their position by clarifying that they only propose to exclude the particular product for sale from being in the environment picture, whereas

the Defendants in the *HMA* case argued the environment picture must be devoid of any product. Docket No. 111 at 19, n.4. Defendants fail to show, however, why such distinction has any bearing on the analysis.

Accordingly, these terms do not require construction.

**"picture" ('776 Patent, claim 61 and '739 Patent claims 1, 11, and 21)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | an image |

Defendants argue the '739 Patent uses the terms "image" and "picture" interchangeably, as Defendants argue the examiner did during prosecution of the '776 Patent. Docket No. 111 at 36. Defendants also argue that the plain and ordinary meaning of "picture" refers to a photograph, which Defendants submit is too narrow because in the context of the patents-in-suit, "a 'picture' relate[s] to any visual, non-textual representation of the subject (e.g., product or environment)," such as "drawings, caricatures and computer generated images." *Id.* at 36–37. CWC replies that "everything in the intrinsic record defines a picture in accordance with its plain and ordinary meaning. Whether the picture is a sketch or of photographic quality is irrelevant." Docket No. 114 at 5.

The claims use "picture" and "image" interchangeably. *See, e.g.*, '739 Patent claim 1 (describing the selecting of a product and environment "image" from a static database that stores "pictures"). However, Defendants fail to show that such equivalency requires a construction. There is nothing in the intrinsic record that indicates the patentee used anything other than the plain and ordinary meaning of the term "picture." Nor have Defendants shown, beyond a conclusory statement, that the plain and ordinary meaning of picture is limited to photographs and thus contrary to its use in the asserted patents.

Accordingly, this term does not require construction.

**"compiling the gathered equipment information in the computer into the customized proposal" ('776 Patent claim 61)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | dynamically assembling in the computer a particular equipment picture, a particular equipment environment picture, and a particular text segment each of which was separately selected in response to at least one of the answers to create the customized proposal |

Defendants first argue that the word "dynamically" must be added to the Court's prior construction of "compiling" because "the entire purpose of th[e] invention, as expressed throughout the '776 specification," is to solve various problems by "dynamically" creating customized, printed proposals for potential purchasers of a product. Docket No. 111 at 21. Defendants next argue that their construction is necessary to clarify "the gathered equipment information" refers to the information that was "retrieved" in step (c) of the claim (*i.e.*, 'particular equipment picture;' 'particular environment picture;' and 'particular text segment;'). *Id.* at 21–22.

Defendants addition of "dynamically" is unnecessary and potentially confusing. The claim language already requires the compiling to be done "automatically." '776 Patent claim 61 ("[A]utomatically compiling the gathered equipment information . . . ."). Defendants' have not shown why the Court should add "dynamically" and whether that word would replace the claim term "automatically." Regarding what the "gathered equipment information" refers to, the parties agreed at oral argument that the plain meaning of the term is that the "gathered equipment information" of step (d) is the same information that was retrieved in step (c). Docket No. 145 at 52:9–12, 55:17–56:3. Therefore, the Defendants' proposed construction listing out the gathered

equipment information is unnecessary.  *See U.S. Surgical Corp.*, 103 F.3d at 1568 ("Claim construction . . . is not an obligatory exercise in redundancy.").

Accordingly, this term does not require construction.

**"customized visual output" ('739 Patent, claims 11, 12, 13, 17, and 18); "single composite customized visual output" ('739 Patent, claim 11); "single composite visual output" ('739 Patent, claims 1, 2, 11, and 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a single image that includes the selected text and an image of a product in a product environment | a single, displayed image (i) that combines the selected text, the selected image of a product, and the selected image of a product environment (ii) for selling a tangible product to a specific, identifiable customer based upon the customer's desired features and uses of the tangible product for sale |

CWC argues the Court should adopt its prior construction of these terms as "a single image that includes the selected text and an image of a product in a product environment." Docket No. 114 at 7–8 (quoting *HMA* Order at 10).  Defendants argue their modification of the Court's construction in the *HMA* Order is necessary to clarify the visual output is the output that displays the customized proposals that are generated by the alleged invention.  Docket No. 111 at 9.

Defendants' additional limitations are redundant in light of the surrounding claim language.  *See, e.g.*, '739 Patent, claim 1 (the customized visual output includes the "tangible product for sale" and created based on a customer's "desired feature and desired uses").  Removing the redundant language from Defendants' construction leaves it equivalent to CWC's.  Therefore, there is no dispute over this claim term.

Accordingly, these terms are construed as "a single image that includes the selected text and an image of a product in a product environment."

**"tangible product" ('739 Patent, claims 1, 11, and 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | a specific, identifiable product |

Defendants argue their proposal "will avoid jury confusion and/or inevitable last-minute (and unnecessary) disputes over [the] 'plain and ordinary meaning' [of 'tangible product'] at trial." Docket No. 111 at 35. Defendants claim "[t]he '739 Patent explicitly describes and discloses the output of the claimed computer-implemented technology as a customized proposal for a specific product of interest to the consumer that is identifiable by the features and uses specified in the customer's answers to a plurality of questions about the product." *Id.* CWC replies that "[s]omething tangible is nothing more than something that is touchable. Words such as 'specific' and 'identifiable' are merely backdoor attempts to read in limitations Defendants have urged repeatedly in 'customized proposal,' [']customized visual output,' 'customer,' and 'of particular interest to the customer.'" Docket. No. 114 at 8.

Introducing "specific" and "identifiable" needlessly adds complication and confusion to a well-understood term. The claim language identifies a tangible product as one that is "for sale." '739 Patent, claim 1. Likewise, the Background and Summary of the Invention uses the context of the car industry to describe a car dealership creating a customized proposal highlighting information for a car that a customer may take on a test drive. '739 Patent, cols 1–2. These descriptions are fully consistent with the ordinary meaning of "a tangible product" as a product that exists and is for sale.

Accordingly, this term does not require construction.

**"automatically selecting by the computer system, in response to at least one of the received answers, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer" ('739 Patent, claim 1, 11); and "automatically selects, in response to at least one of the answers, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer"('739 Patent, claim 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the terms need to be construed they should be given its plain and ordinary meaning. | automatically selecting by the computer system, in response to at least one of the received answers, an image of a tangible product for sale [of particular interest to the customer], an image of an environment in which the product for sale is to be used [of particular interest to the customer] and a text segment comprised of a description of the product specifications and performances [of particular interest to the customer] |

Defendants argue their proposed constructions are "intended to clarify that the phrase 'of particular interest to the customer' applies to each of the following limitations in the '739 Patent, claims 1, 11, and 20: (1) 'an image of a tangible product for sale,' (2) 'an image of an environment in which the product for sale is to be used,' and (3) 'a text segment comprised of a description of the product specifications and performances.'" Docket No. 111 at 24. Defendants urge that "[t]he claims are clear, the specification is clear, and the parties and [the Federal Circuit] panel in the *Hyundai* case were clear that the phrase 'of particular interest to the customer' applies to each of the limitations . . . ." *Id.* at 25. Defendants argue that judicial estoppel should preclude CWC from arguing otherwise. *Id.* at 25–26.

CWC argues that at the Federal Circuit, it presented an alternative argument where it claimed the plain and ordinary meaning of this phrase does not require "of particular interest" to apply to each of the selections. Docket No. 114 at 9 (citing *id.*, Ex. 1, *Clear with Computers v.*

*Hyundai Motor Am., Inc.*, No. 2012-1291, 2/5/2013 Hr'g Tr. at 30:22–31:1). Thus, CWC claims it is being consistent by now arguing the same thing. *See* Docket No. 114 at 9.

The dispute involving these terms in the *Xerox* and *Staples* Orders focused on whether a particular product picture, a particular product environment picture, and a particular text segment are selected in three separate steps. *See Xerox* at 6 (citing *Staples* at 735) (finding this selected information must be selected in three separate steps). The current dispute concerns whether the phrase "of a particular interest" modifies each of these selections. CWC addressed this issue both at post-trial in the *Hyundai* case and on appeal at the Federal Circuit. Notably, during the *Hyundai* post-trial briefing, the parties and the Court understood that the selections must be of particular interest to a customer. *Hyundai*, No. 6:09-cv-479, Docket No. 413 at 4-5 (E.D. Tex. Jan. 9, 2012) (holding "[t]he particular interest limitation requires that the selected environment in which a product is displayed be 'of particular interest to the customer'"). Likewise, at the Federal Circuit, CWC's primary argument assumed the selected environmental image was of particular interest to the customer. Docket No. 114, Ex. 1 at 29, *Clear with Computers v. Hyundai Motor Am., Inc.*, No. 2012-1291, Feb. 5, 2013 Hr'g Tr. at 28:11–29:16).

Additionally, the specification treats each of the selections as being of particular interest to the customer. '739 Patent at col. 2:31–35 (The customized proposal . . . contains pictures, textual descriptions, and pricing information *that is all of interest to and relevant to a specific customer*, since all of the pictures and text were linked together based upon the customer's answers."); col. 4:50–5:44 (describing Figs. 1A and 1B, which illustrate the environmental pictures, product options and text segment are based on the customer's needs, desires, or interests); col. 11:23–28 (explaining the "individual feature, benefits, and environments . . . are

of particular interest to the individual customer"). The specification thus confirms that "of particular interest" modifies all the selections.

Accordingly, these terms are construed as "automatically selecting by the computer system, in response to at least one of the received answers, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used, and a text segment comprised of a description of the product specifications and performances, wherein the product, environment, and text segment are each of particular interest to the customer."

**"of particular interest to the customer" ('739 patent, claims 1, 11 and 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | desired by the specific, identifiable customer as specified by his/her answers to the questions and not generic information about the product provided to all customers of the product |

Defendants argue that the Court should construe this disputed term because "'particular interest' is a subjective term of degree relating to a person's mental preferences ('interest') modified by an indefinite adjective ('particular')." Docket No. 111 at 15–16. Defendants contend that "because the '739 Patent teaches away from predetermined, generic brochures for all customers, what the claim refers to as 'of particular interest to the customer' cannot include generic information." *Id.* at 16. Defendants also argue that "construction of this term must provide an objective criteria for determining whether something is 'of particular interest' and therefore, met by the claims. In the context of the '739 Patent, the 'interest' of a specific, identifiable customer is derived from the answers to questions posed to the customer." *Id.* at 17.

CWC responds that Defendants are improperly attempting "to import their definition of 'customer' here." Docket No. 114 at 10. CWC further claims the term does not require any

objective criteria and that the Federal Circuit held "of particular interest to the customer" does not require a construction. Docket No. 114 at 10.

The Court has already discussed the claim scope and construction of "customer" above, and there is no need to incorporate that discussion into the term "of particular interest." Defendants' negative limitation of "not generic information about the product provided to all customers of the product" is too broad and could exclude information that is provided to more than one customer. For example, multiple customers may answer individual questions in a similar manner and thereby receive the same information that is "of particular interest" to them, but this does not necessarily mean the information is "generic" or outside the scope of the claims.

The specification describes the invention as a system that queries a customer to determine his or her interests and creates customized proposal based on those interests. '739 Patent cols. 1–2. The selected product image, environment image, and text are based on the interests of the customer, which is consistent with the ordinary meaning that they are "of particular interest" to the customer.

Accordingly, this term does not require construction.

**"active database" ('739 Patent, claims 1, 11, and 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a database that is alterable based on user input | a database that is alterable during generation of a composite visual output based on user input |

Defendants argue that the claims "make clear that the 'active database' is only alterable during generation of the composite visual output." Docket No. 111 at 27. According to Defendants, the active database is only used in the context of generating the claimed "single composite visual output." *Id.* Defendants claim this temporal limitation is also needed because

CWC's infringement contentions accuse instrumentalities that are "wholly unrelated" to the customized visual output.[4]

CWC responds that the Court should adopt its construction from the *HMA* Order. Docket No. 114 at 10. CWC argues that "[n]othing in the plain language of the claims states 'during generation of a composite visual output.'" *Id*. CWC also criticizes Defendants for improperly relying on infringement theories as a basis for their proposed construction. *Id*. at 11.

Noninfringement disputes are a separate inquiry from claim construction. Defendants' concerns about the breadth of CWC's infringement contentions, however valid, are not a legitimate reason to add their proposed temporal limitation to the claim. Additionally, Defendants' proposal, as written, is not more limiting than CWC's. Both parties appear to assume Defendants' construction mandates that the active database is alterable *only* during generation of a composite visual output, though the proposed language is not so restricting. Defendants did not address this inconsistency at oral argument.

Assuming the Defendants meant that an active database is alterable only during generation of a composite visual output, the Defendants did not justify such a negative limitation. The active database clearly is alterable during the generation, but the claim does not prohibit the active database from being altered at other times. Though the preferred embodiment describes that the active database is "typically" altered during the generation of a composite visual output, such a limitation is not mandatory, nor is it found in the claim language. *See* '739 Patent at col. 6:3–11 ("Customer-related information may be entered . . . typically beginning at the time the program is first started, and may continue to be entered intermittently throughout the time the

<hr>

[4] Defendants cite CWC's infringement contentions against Defendant JCB for example. Docket No. 111 at 27. CWC identifies the "Find a Dealer" form, wherein a user enters their zip code into a form to generate a map showing "Recommended JCB Dealer[s]" as meeting this limitation—however, this form is not used to create the JCB product profile page, which is the identified "single composite visual output of claim 11 of the '739 Patent.

program is running,"). Therefore, the Court adopts its prior construction expressed in the *HMA* Order.

Accordingly, an "active database" is "a database that is alterable based on user input."

**"customer information" ('739 Patent, claims 1, 11, 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. | information about the customer that is used to generate the customized visual output |

Defendants argue their proposal properly explains that the customer information is used to generate the customized visual output. Docket No. 111 at 28. Defendants explain that "[b]ecause 'customer information' is within the 'wherein' clause, a clause having the purpose of providing more detail on how the 'customized visual output' is generated, the 'customer information' is necessarily used in generating the 'customized visual output.'" *Id*. at 29. Defendants submit that the specification and the prosecution history similarly explain that the customer information is linked with all the other information that is used to generate the customized visual proposal. *Id*. at 30. CWC replies that "Defendants' 'wherein' and 'linking' arguments cannot and do not overcome the 'heavy presumption' that the terms in a patent claim should be given their ordinary meanings." Docket No. 114 at 11. According to Defendants, customer information is a well understood term and "there is nothing in the claim language [that says] the [customized visual output] is based on the customer information." Docket No. 145 at 70:22–24.

Defendants' added requirement that the information is "used to generate the customized visual output" is redundant and unnecessary in light of the surrounding claim language. For example, claim 1 of the '739 Patent recites a "single composite visual output is generated by" a selection device that is "operatively interconnected" to the "active database," which contains the

customer information, in the same way the selection device is "operatively connected" to a static database, which contains the product text and pictures. Thus, Defendants are correct that the customer information is used in the generation of the customized visual output. However, such a reading is nothing more than the plain meaning of the term read in context of the claim. CWC did not rebut Defendants' citations to the specification and prosecution history, which are consistent with this reading.

Accordingly, this term does not require construction.

**"dynamically building a template utilizing the selection device to fill in the template to produce the [single] customized visual output" ('739 Patent, claims 1, 11, 20)**

| CWC's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| constructing a template that may be modified to fit selected images and text utilizing the selection device;<br><br>*See* "single composite visual output" and "customized visual output"; plain and ordinary meaning for remaining terms. | dynamically constructing a customized template filled in by the selection device using customer information selected from the active database and text and pictures from the static database |

Defendants argue that "[w]hile the Court construed 'dynamically building a template' in [the] *HMA* case, that construction did not consider the dispute between the parties in this action, *i.e.*, the meaning of [the] 'utilizing the selection device to fill in the template to produce the customized visual output/single composite visual output' language." Docket No. 111 at 32. Defendants submit that "given the claimed 'wherein' clause, the active database (storing customer information) and the static database (storing text and pictures) are necessary for generating the customized visual output." *Id.* at 32–33. Otherwise, Defendants argue, "the claim would be vague and ambiguous as to what the selection device is using to 'fill in the template.'" *Id.* at 33. Finally, Defendants criticized CWC's construction for not including the word "dynamically." Defendants assert "dynamically" should be included or construed because the

patentee added it during prosecution to explain that "the system, method or computer readable product according to the present disclosure *dynamically* builds a template." *Id.* at 33–34 (quoting *id.*, Ex. J, 5/27/2009 Amendment Under 37 C.F.R. §1.116 and Statement of Substance of Interview at 14) (emphasis added).

CWC responds that "[t]he term 'wherein' and the remaining claim terms have not changed since the Court ruled on this term in the *HMA* Order. The reliance on the prosecution history is also misplaced and was also before this Court previously." Docket No. 114 at 11.

The amendment which added the word "dynamically" shows the patentee used the phrase "dynamically building a template" to mean the process of "utilizing a selection device to fill in the template." Docket No. 111, Ex. J at 14 (5/27/2009 Amendment under 37 C.F.R. §1.116 and Statement of Substance of Interview). "Utilizing a selection device to fill in the template" is part of the claim language. '739 Patent, claim 1. Therefore construing the term "dynamically building a template utilizing the selection device to fill in the template . . ." does not need to repeat the word "dynamically" as part of the construction as Defendants suggest.

Additionally, Defendants' language restating the roles of the active database, static database, and customer information is unnecessary in light of the surrounding claim language. For example, claim 1 of the '739 Patent recites that "the system dynamically building a template utilizing the selection device . . . to produce the single composite visual output," and that the selection device is "operatively interconnected to an active database [and] a static database." Incorporating these claim limitations in the construction of the "dynamically building" terms is thus improper. Removing this language from Defendants' proposal results in essentially the same construction the Court adopted in the *HMA* Order and that CWC advocates.

Accordingly, they dynamically building terms are construed as "constructing a template that may be modified to fit selected images and text utilizing the selection device."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table in Appendix A.

**So ORDERED and SIGNED this 12th day of June, 2014.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

| Claim Term | Court's Construction |
|---|---|
| customized proposal | No construction is necessary. |
| customer | No construction is necessary. |
| information identifying a customer's desired equipment features and uses | No construction is necessary. |
| plurality of questions relating to features and uses of the equipment | No construction is necessary. |
| plurality of answers to the questions, the answers specifying the customer's desired equipment features and uses | No construction is necessary. |
| equipment environment pictures" ('776 Patent, claim 61) and "an image of an environment in which the product for sale is to be used" ('739 Patent, claims 1, 11, and 20) | No construction is necessary. |
| "picture" ('776 Patent, claim 61 and '739 Patent claims 1, 11, and 21) | No construction is necessary. |
| "compiling the gathered equipment information in the computer into the customized proposal" ('776 Patent claim 61) | No construction is necessary. |
| "customized visual output" ('739 Patent, claims 11, 12, 13, 17, and 18); "single composite customized visual output" ('739 Patent, claim 11); "single composite visual output" ('739 Patent, claims 1, 2, 11, and 20) | "a single image that includes the selected text and an image of a product in a product environment" |
| "tangible product" ('739 Patent, claims 1, 11, and 20) | No construction is necessary. |
| "automatically selecting by the computer system, in response to at least one of the received answers, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer" ('739 Patent, claim 1, 11); and "automatically selects, in response to at least one of the answers, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer"('739 Patent, claim 20) | "automatically selecting by the computer system, in response to at least one of the received answers, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used, and a text segment comprised of a description of the product specifications and performances, wherein the product, environment, and text segment are each of particular interest to the customer" |

| Claim Term | Court's Construction |
|---|---|
| "of particular interest to the customer" ('739 patent, claims 1, 11 and 20) | No construction is necessary. |
| "active database" ('739 Patent, claims 1, 11, and 20) | "a database that is alterable based on user input" |
| "customer information" ('739 Patent, claims 1, 11, 20) | No construction is necessary. |
| "dynamically building a template utilizing the selection device to fill in the template to produce the [single] customized visual output" ('739 Patent, claims 1, 11, 20) | "constructing a template that may be modified to fit selected images and text utilizing the selection device" |